UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────────

JANE BELLUCCO,

                               Plaintiff,             Case # 18-CV-6346-FPG

v.                                                               DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.
─────────────────────────────────────

## INTRODUCTION

Plaintiff Jane Bellucco brings this action pursuant to the Social Security Act seeking review of the denial of her DIB ("Disability Insurance Benefits") application. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 12. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On July 19, 2012, Bellucco applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 156-62. She alleged disability since June 1, 2006 due to chronic fatigue syndrome, fibromyalgia, high cholesterol, anxiety, panic attacks, and depression. Tr. 77-78. On January 7, 2014, Bellucco and a vocational expert ("VE") testified at a hearing before Administrative Law Judge John P. Costello ("the ALJ"). Tr. 37-75. On March 17, 2014, the ALJ issued a decision finding that Bellucco was not disabled. Tr. 14-30. On June 22, 2015, the Appeals Council denied Bellucco's request for review. Tr. 1-4. Bellucco appealed to this Court and, on September 23,

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

2016, it remanded her case to the Commissioner for further administrative proceedings. *See Bellucco v. Colvin*, No. 15-CV-6483P, 2016 WL 5334438 (W.D.N.Y. Sept. 23, 2016); Tr. 499-532.

On December 12, 2017, Bellucco and a VE appeared and testified at another hearing before the ALJ. Tr. 462-94. On February 26, 2018, the ALJ issued a decision finding that Bellucco was not disabled. Tr. 445-55. This became the Commissioner's final decision because the Appeals Council did not assume jurisdiction of the case. *See* 20 C.F.R. § 404.984(a) (in cases remanded from district court for further proceedings, the ALJ's decision becomes the Commissioner's final decision unless the Appeals Council assumes jurisdiction). On May 7, 2018, Bellucco filed this action that seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ analyzed Bellucco's claim for benefits under the process described above. At step one, the ALJ found that Bellucco had not engaged in substantial gainful activity from her alleged disability onset date of June 1, 2006 through her date last insured of December 31, 2011. Tr. 447. At step two, the ALJ found that Bellucco had the following severe impairments: chronic fatigue syndrome and depressive and anxiety disorders. Tr. 447-48. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 448-49.

Next, the ALJ determined that during the relevant period Bellucco retained the RFC to perform sedentary work[2] with additional limitations. Tr. 450-53. Specifically, the ALJ found that Bellucco could frequently handle and finger and type for 15 minutes continuously before needing a 10-minute break; could perform only simple, routine tasks and low stress work involving only occasional decision making; and could only occasionally interact with coworkers and the public. Tr. 450.

At step four, the ALJ found that this RFC prevented Bellucco from performing her past relevant work. Tr. 453-54. At step five, the ALJ relied on the VE's testimony and found that Bellucco could have adjusted to other work that existed in significant numbers in the national

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

4

economy given her RFC, age, education, and work experience. Tr. 454-55. Specifically, the VE testified that Bellucco could have worked as a document preparer and surveillance system monitor. Tr. 455. Accordingly, the ALJ concluded that Bellucco was not disabled from June 1, 2006 to December 31, 2011. *Id.*

**II.     Analysis**

Bellucco argues that remand is required because the ALJ ignored the opinion of licensed clinical social worker Carol E. Horowitz.[3] ECF No. 91 at 18-22. The Court agrees.

The ALJ must "evaluate every medical opinion [he] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998) (citation omitted); *see also* 20 C.F.R. § 404.1527(c). Thus, an ALJ must evaluate a social worker's opinion; however, that opinion is not entitled to controlling weight because a social worker is considered an "other source" and not an "acceptable medical source." *Martino v. Comm'r of Soc. Sec.*, No. 1:17-CV-01071 EAW, 2018 WL 5118318, at *7 (W.D.N.Y. Oct. 19, 2018); *see also* S.S.R. 06-03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). Nonetheless, evidence from a social worker may be based on "special knowledge" of the claimant and "provide insight" into the severity of her impairments and functional limitations. S.S.R. 06-03p, 2006 WL 2329939, at *2. When an ALJ considers how much weight to give a social worker's opinion, he generally considers the same factors used to weigh opinions from acceptable medical sources.[4] *See* 20 C.F.R. § 404.1527(f)(1). Depending on the facts of the case, a social worker's opinion can outweigh the

---

[3] Bellucco advances another argument that she believes requires reversal of the Commissioner's decision. ECF No. 9-1 at 22-26. The Court will not reach that argument because it disposes of this matter based on the ALJ's failure to evaluate Ms. Horowitz's opinion.

[4] Those factors are: (1) whether the source examined the claimant; (2) whether the source had a treating relationship with the claimant and the length, nature, and extent of that relationship; (3) whether the opinion is supported by relevant evidence and is well-explained; (4) whether the opinion is consistent with the record as a whole; (5) whether the source is a specialist opining about medical issues related to his or her area of expertise; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).

opinion of an acceptable medical source if, for example, she has seen the individual more often and provided better supporting evidence and a better explanation for her opinion. *Id.*

An ALJ is entitled to afford little or no weight to a social worker's opinion, but he "generally should explain the weight given" to that opinion "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning, when such opinions may have an effect on the outcome of the case." S.S.R. 06-03p, 2006 WL 2329939, at *6; 20 C.F.R. § 404.1527(f)(2); *see also Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) ("While the ALJ was free to conclude that the opinion of a licensed social worker was not entitled to any weight, the ALJ *had to explain* that decision.") (emphasis added)).

On September 22, 2006, Ms. Horowitz completed a form that evaluated Bellucco's psychiatric conditions. Tr. 802-03. She diagnosed Bellucco with depressive disorder not otherwise specified,[5] assessed a Global Assessment of Functioning ("GAF") score of 50,[6] and indicated that Bellucco complained of anxiety and depression. Tr. 802. Ms. Horowitz opined that Bellucco must "cease work" and could return to work when her symptoms resolved. Tr. 803. She indicated that Bellucco's psychiatric impairments prevent the possibility of vocational rehabilitation due to poor concentration, fatigue, and pain issues that hinder her functioning. *Id.*

---

[5] Bellucco used the diagnostic code 311, which refers to this condition. *See* John M. Grohol, Psy.D., PsychCentral, DSM-IV Diagnostic Codes, *available at* https://psychcentral.com/disorders/dsm-iv-diagnostic-codes/ (last visited Apr. 10, 2019).

[6] Mental health professionals use GAF scores to rate an individual's level of psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *See* Global Assessment of Functioning (GAF) Scale, *available at* https://www.albany.edu/counseling_center/docs/GAF.pdf (last visited Apr. 10, 2019). A GAF score of 50 indicates that Bellucco had serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational, or school functioning (*e.g.*, no friends, inability to keep a job). *Id.*

Even though the ALJ was required to evaluate every medical opinion he received, he did not discuss Ms. Horowitz's opinion or otherwise indicate that he reviewed and considered it. The Commissioner argues that the ALJ did not err because there is "no chance" that Ms. Horowitz's opinion could have changed the outcome of Bellucco's application and therefore the ALJ did not have to discuss it. ECF No. 12-1 at 19-22. According to the Commissioner, Ms. Horowitz's opinion is inconsistent with her own treatment notes and other record evidence. *Id.* at 20-21. But the ALJ did not offer any reasons for rejecting Ms. Horowitz's opinion, or even indicate that he reviewed it, and the Commissioner may not substitute her own rationale when the ALJ failed to provide one. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's post hoc rationalizations for agency action.").

Despite the Commissioner's assertions to the contrary, review of the relevant factors indicates that Ms. Horowitz's opinion could change the outcome of Bellucco's case.[7] The record reveals that Ms. Horowitz, a specialist in the area of mental health, examined Bellucco numerous times and had a treating relationship with her. Tr. 788-89, 791, 797-801, 804, 806-09. But the ALJ seemed completely unaware of this relationship; he stated that "[t]he record does not show that [Bellucco] received treatment from any mental health professional." Tr. 451. The regulations place particular importance on a claimant's treating relationship with a provider, and specifically recognize that a social worker's opinion may even outweigh an acceptable medical source's opinion based on an ongoing treatment relationship. *See* 20 C.F.R. § 404.1527(f)(1); *see also*

---

[7] The Court recognizes that a medical source's statement that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will find that claimant disabled, because it is the Commissioner's responsibility to determine whether a claimant meets the statutory definition of disability. *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 809-10 (W.D.N.Y. 2016); *see also* 20 C.F.R. § 404.1527(d)(1). But this does not mean the SSA can simply ignore such a statement; it indicates that it will "review all of the medical findings and other evidence that support a medical source's statement that [the claimant is] disabled." *Id.* Moreover, in addition to opining that Bellucco could not work at all, Ms. Horowitz indicated that Bellucco had issues with poor concentration, fatigue, and pain, and it is unclear whether the RFC determination adequately accounts for any resulting limitations.

*Pogozelski v. Barnhart*, No. 03 CV 2914 (JG), 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (noting that "some weight should still have been accorded to [the therapist]'s opinion based on his familiarity and treating relationship with the claimant"); *White v. Comm'r of Soc. Sec.*, 302 F. Supp. 2d 170, 176 (W.D.N.Y. 2004) (finding that the ALJ erred by not giving appropriate weight to a social worker's opinion, especially considering his "regular treatment relationship" with the claimant).

Accordingly, because the ALJ did not acknowledge or discuss Ms. Horowitz's opinion, remand is required. Because Bellucco filed her application over six years ago, the Court directs the Commissioner to expedite the remand and review of this case. *See, e.g.*, *McGee v. Berryhill*, 354 F. Supp. 3d 304, 313 (W.D.N.Y. 2018) (stating that "district courts may . . . set a time limit for action by the administrative tribunal").

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Court directs the Commissioner to expedite the remand and review of this case. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 15, 2019
    Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court